## 53685. DEPARTMENT OF HUMAN RESOURCES v. BAGLEY.

DEEN, Presiding Judge.

In a prior divorce proceeding, a decree of divorce was entered between the appellee and her husband in which the latter was liable for child support payments of $100 per month for Kim D. Bagley, the only living child of the parties at that time. Some months after the divorce Jason C. Bagley was born; it is uncontested that he was a child of the marriage and that the decree makes no provision for his support.

The husband subsequently became delinquent in support payments and the appellee brought a contempt proceeding against him which terminated in the husband paying the amount of his obligation into court and thus placing himself on a current basis. At this point the State Department of Human Resources, which had made welfare payments to the wife, filed a motion to intervene in the case and, this being granted, filed a money rule against the clerk of court contending that the sum of $1,200, representing child support payments for the prior twelve month period, should be paid directly to it. The court after hearing evidence ordered the money paid to the mother, and the department appeals. *Held:*

1. The purpose of the federal program for grants to states in the latter's administration of aid to families with dependent children (AFDC) is to encourage the care of

children in their own homes by enabling each state to furnish financial assistance to needy and dependent children and their parents living in the home, and thus to strengthen family life with the purpose of helping the family achieve self-support and personal independence. 42 USCA § 601. To be eligible for federal assistance the state plans must require certain standards to be met, including provision that as a condition of eligibility for aid the applicant be required to assign to the state any rights to support which have accrued at the time such assignment is executed, and cooperate with the state in obtaining support payments for such applicant or child. 42 USCA § 602 (a) (26) (A, B). Pursuant thereto 45 CFR § 232.11 (a) (i) requires that as a condition of eligibility for assistance the state plan must provide that the applicant assign to it any rights to support from any other person that the applicant may have on behalf of any family member for whom the assistance is to be provided "[w]hich have accrued at the time such assignment is executed." 45 CFR § 232.11 (a) (1) (i, ii). "When a family ceases receiving assistance under the State's title IV-A plan, the assignment of support rights under § 232.11 of this title terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the IV-D agency shall . . . determine the Federal Government's share of the collection so the IV-A agency may reimburse the Federal Government to the extent of its participation in the financing of the assistance payments." 45 CFR § 302.51 (f) (2). Georgia has complied with federal law in the enactment and administration of the Child Support Recovery Act, Code Ch. 99-9B. Receipt of welfare payments creates a debt by the parent to the state, limited, in the case of sums specified in divorce decrees, to the amount there stated. "This liability shall attach only with respect to the period of time during which public assistance is granted and only if the parent or parents were financially able to furnish support during this period." Former Code § 99-904b, Ga. L. 1973, pp. 192, 194. This sentence was omitted when the section was rewritten (Ga. L. 1976, pp. 1537, 1539, eff. April 7, 1976). It was, however, the law during a large part of the time in which

the support money collected in the contempt proceeding came due, and is therefore applicable to support provisions of the divorce decree until the effective date of the new Act.[1] Acceptance of such financial assistance constitutes an assignment of the right to any child support owed up to the amount of assistance paid. "The department shall be subrogated to the right of the child or children or the person having custody to initiate any support action existing under the laws of this State and to recover any payments ordered by the courts." Code § 99-905 (b).

In the same vein, 45 CFR § 303.6 provides: "For all cases under the State plan in which the obligation to support and the amount of the obligation have been established, the IV-D agency *must* maintain an effective system for identifying, within 30 days, those cases in which there is a failure to comply with the support obligation and to contact such delinquent individuals as soon as possible in order to enforce the obligation and obtain the current support obligation and any arrearages. Such attempts to collect support *must* include the institution of the following procedures as applicable and necessary: (a) Contempt proceedings to enforce an extant court order. . ." (Emphasis supplied.) It follows that the

---

[1] $1,200, or a year's back payments, were collected in the contempt proceeding, and it is obvious that this action was filed much less than a year after the April, 1976, amendment was added. If this amendment did indeed have for its purpose the allowing of the state to collect back support payments in cases where the "parents were financially able to furnish support during this period" (especially where the state has not shown what part of the money it is entitled to) then this creates a new right in the state and cannot be given a retroactive effect. *Williams Bros. Lumber Co. v. Anderson,* 210 Ga. 198, 204 (1) (78 SE2d 612). It gives to the state a right not recognized at common law, and must therefore receive a strict construction. *Bloodworth v. Jones,* 191 Ga. 193, 194 (11 SE2d 658). Again, the state has failed to show to what part of the sum collected the amendment would apply.

purpose of the assignment is to allow the department to carry out its own obligation to collect from the delinquent parent. The department here utterly failed in this duty, but hung back until the mother of these children employed a lawyer, initiated and followed through with a contempt action and collected the back payments reaching at the very least into some undetermined time in 1975, and now attempts to seize the entire amount of such payments without offering any proof of when or in what amount its own assistance was given so as to show its own entitlement.

It is apparent that the overriding purpose of AFDC is to keep the family together and financially self-supporting. The provisions for recovery of payments advanced from the parents, particularly from a parent under a court order to provide support, and for reimbursement to the state and by it to the federal government, are designed to keep the burden of support of the family on the shoulders of the breadwinner so far as possible. We have not quoted all of the "Distribution of child support collections" rules set out in 45 CFR § 302.51, but, taking them as a whole, it is obvious that the distributions contemplated are those of funds received as a result of state collection actions *initiated by it.* Subdivision (e) (1), for example, states that when child support payments "collected and distributed under the title IV-D State plan" cease, the state may continue to collect current support payments from the absent parent for a period not exceeding three months.

It then becomes pertinent to examine these statutes and regulations in view of the beneficent purposes to be effected. When so construed, the assignment of an accrued right of support to the state is for the purpose of allowing the state to initiate collection litigation. It is certainly not for the purpose of taking away those very payments which would render the family unit financially solvent and by so doing to leave it in a situation where the governmental agency continues with the burden of making monthly welfare payments. In the present case the state did not initiate and took no part in the collection activity. The plaintiff was forced to hire an attorney and incur litigation expenses to recover the overdue child support

payments which the state wishes to seize, thus leaving her and her children in a financially dependent condition such that welfare payments would no doubt have to continue, rather than removing herself, at least temporarily, from the welfare rolls as a result of the increased income. We find the state not entitled, in a money rule against the clerk of court, to seize funds paid in by the husband in a contempt proceeding initiated and prosecuted by the wife.

2. There is, however, another reason for affirming the judgment of the superior court. The $1,200 payment represents one year's support for the older child, Kim Bagley. The welfare payments were for two children, Kim and Jason. So far as this record shows, there was no attempt to put in evidence what part of the payments made to the appellee were for the benefit of Kim, and under no circumstances would payments made under court order for the benefit of Kim be retrievable by the Department of Human Resources to balance out payments made for the benefit of Jason. Further than that, the appellant failed to prove any welfare payments whatever other than one in the sum of $80 paid on September 1, 1976, the last month in which payments were made. Mrs. Bagley testified that she had had checks for perhaps two or three months, and there is no other evidence on the subject. It is therefore clear that under any view of the case the appellant is not entitled to the $1,200, and it has failed to show to what sum, under its own construction of the statutes, it would be entitled. It has instead insisted that the entire fund should be transferred to it and that it will then make its own calculations and return any sum which it cannot claim to Mrs. Bagley. We can think of no maneuver more calculated to keep this and like families on the welfare rolls forever, and thus thwart the very purpose for which the statutes were enacted.

The trial court did not err in entering judgment against the appellant intervenor.

*Judgment affirmed. Marshall, J., concurs. Webb, J., concurs specially.*

ARGUED APRIL 6, 1977 — DECIDED APRIL 19, 1977 —

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Don A. Langham, First Assistant Attorney General, Michael J. Bowers, Senior Assistant Attorney General, Dallas P. Jankowski, Staff Assistant Attorney General,* for appellant.

*Finn, Donehoo & Cunningham, Dean B. Donehoo,* for appellee.

Webb, Judge, concurring specially.

I concur only in that portion of the majority opinion asserting that the Department of Human Resources failed (a) to offer "any proof of when or in what amount its own assistance was given so as to show its own entitlement," and (b) to show what part of the payments made to the mother was for the older child, Kim, and thus for that reason the trial court did not err in entering judgment against DHR as intervenor.